(54 Misc. Rep. 67.)

### PEOPLE v. AMERICAN ICE CO.

(Supreme Court, Special Term, New York County. April, 1907.)

1. DISCOVERY—INSPECTION AND EXAMINATION OF BOOKS—NATURE AND SCOPE OF REMEDY.

Where, in an action by the people, based on the alleged maintenance of a monopoly in the sale of ice, in violation of Laws 1899, p. 1514, c. 690, the Attorney General applies for an order directing the production of the books, papers, etc., of defendant for examination, as authorized by sections 4–7 (pages 1515, 1516) his position on such application is somewhat analogous to that of one who had a right before the commencement of an action to an inspection of the books sought, and should not be subjected to the strict rules that might obtain if a different relationship between the parties existed.

2. SAME—APPLICATION—GOOD FAITH.

Where, in an action by the people, based on the alleged maintenance of a monopoly in the sale of ice, in violation of Laws 1899, pp. 1515, 1516, c. 690, the Attorney General seeks an examination of the books of defendant, as authorized by sections 4–7, it will not be assumed that he is prompted by improper motives in making the application, upon mere assertions to that effect in defendant's affidavits, unsupported by facts.

3. SAME.

In an action by the people, based on the alleged maintenance of a monopoly in the sale of ice, in violation of Laws 1899, pp. 1515, 1516, c. 690, wide latitude in the examination of defendant's books, as authorized by sections 4–7, must be given, extending, not only to the transactions attacked, but to the previous history of the corporation, including its organization and transactions subsequent thereto, in connection with which an illegal scheme to prevent competition might be inferred.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 16, Discovery, §§ 113–115.]

Action by the people, against the American Ice Company, based on the alleged maintenance by defendant of a monopoly in the sale of ice, in violation of Laws 1899, p. 1514, c. 690. Motion for an inspection and discovery of defendant's books, etc. Granted.

See 104 N. Y. Supp. 858.

W. S. Jackson, Atty. Gen. (W. H. Black, of counsel), for the People. Thomas D. Adams, for defendant.

GREENBAUM, J. The order for inspection and discovery sought, doubtless, is very sweeping, and it behooves one to make a careful analysis of the large mass of books, documents, papers, and records which the plaintiff desires to examine before determining the propriety

of granting the relief prayed for. The action is based upon the alleged maintenance by the defendant of a monopoly in the sale of ice, in violation of chapter 690, p. 1514, of the Laws of 1899, and is brought to secure the annulment of certain arrangements and contracts alleged to have been entered into and illegally contrived by the defendant, and to enjoin the consummation of said alleged unlawful acts. The practice pursued in similar applications in numerous cases cited pro and con has been pressed upon the court's attention; but it is evident that, although certain cardinal rules that have been generally recognized are valuable as guides, the court's action in each case must be controlled by a consideration of the special and peculiar facts presented in a given case.

This application must be differentiated from that class of cases in which the parties to an action had been dealing at arm's length, and where a strict adherence to rules may be necessary to protect a party from needless examinations of his books and papers, from unnecessary annoyance, or from an unwarranted investigation of his affairs. A much more liberal practice is observed in controversies between parties relating to partnership transactions, or those in which they had a common interest, and where the documents or papers have reference to the joint enterprise or venture. The rights of the parties in this case must also be determined by their relations toward each other. The state, by virtue of the duty it owes to the people to protect them against monopolies in the manufacture, production, or sale of commodities of common use, has seen fit to provide by statute a most drastic and sweeping procedure for the examination of witnesses and of books, papers, and documents, upon the application of the Attorney General, whenever he has determined to commence an action or proceeding under the act in question before the beginning of such action or proceeding. Laws 1899, pp. 1515, 1516, c. 690, §§ 4–7. It will thus be observed that in this case the Attorney General would have had the right to apply for an order as sweeping and broad as that now asked for. His position before the court upon this motion is, therefore, somewhat analogous to that of one who had a right before the commencement of the action to an inspection of the papers, and where the petitioner, seeking to examine the papers after action brought, should not be subjected to the strict rules that may be applicable where a different relationship between the parties exists. The much-quoted phrase "fishing excursion" would scarcely be appropriate to a case like this, and certainly no ulterior or improper purpose ordinarily will be assumed to animate the action of the Attorney General, an officer of the state solemnly charged with the performance of important public duties.

It is alleged in the answering affidavits that various proceedings have heretofore been taken against defendant as a result of agitation in the press, and that these proceedings were abandoned, and that the defendant is the victim of unnecessary and unwarranted attacks provoked by sensational newspapers. Whatever may have led to previous proceedings against the defendant, it is evident that no proof is here submitted that this action is in any wise connected with newspaper attacks, sensational or otherwise. The bad faith of the Attorney Gener-

al, however, is assailed by the defendant in the assertion that the institution of this action and of this proceeding is inspired by two certain unnamed "prominent politicians, high in the councils of the Democratic Party," who, it is alleged, lost large sums of money in speculative dealings in the stock of the American Ice Securities Company, which is a large holder of the stock of the defendant corporation. It is alleged that this motion is made as a retaliatory measure in behalf of the aforesaid politicians. The charge is a most serious one, and, if established, would undoubtedly be entitled to great weight upon the question of the good faith of the application. But the affidavit discloses no facts whatever upon which judicial consideration may be based. The sources of affiant's information are not disclosed, the grounds for asserting the Attorney General's complicity with the so-called Democratic politicians are not stated, and not a solitary circumstance is presented showing the Attorney General's relations to or connection with these politicians. The names of the latter persons are not disclosed, although it is suggested on defendant's brief that, if desired, they will be secretly whispered in the ears of the court. Enough has been said to demonstrate that it would be monstrous for the court to give any heed to allegations thus presented. If there be foundation in fact for the grave charges laid at the door of the Attorney General, such facts or circumstances should be submitted as would enable the court to draw its own inferences as to the truth or probable truth of such charges. Every public official is presumed to do his duty. No presumption may be indulged in that the Attorney General is acting in bad faith, that he is perverting to base purposes the high office which he fills, or that he is using his official position to subserve personal, dishonest, or ulterior ends. In the absence, therefore, of any presentation of facts from which an inference of bad faith may be drawn, I am constrained to dismiss from consideration the arguments directed to this feature of the discussion.

Coming, now, to the merits of the motion, it is apparent that, if the inspection be limited to papers, books, and records subsequent to March 8, 1904, after which period defendant does not object to the examination, the plaintiff may be deprived of valuable information in support of the allegations of its bill. It is evident that the success of plaintiff's case may to a great extent depend upon its ability to show the history of the organization of the defendant, its original and subsequent capitalization, assets, liabilities, cost of operation, earnings, dividends, its original and after-acquired plant, its agencies and sources of supply, and agreements heretofore made, even though not now in force, as all these may be essential elements in proving the alleged monopolistic scheme. For example, it may be important to show that contracts anterior to March, 1904, resulted in the permanent discontinuance of certain plants, sources of supply, or competition. It is also manifest that in an action of this nature wide latitude in examination must be granted, not only for the purposes of proper and ample preparation, but also to facilitate the presentation of the proofs on the trial. And even if it be assumed, as defendant urges, that the monopoly alleged in the complaint is limited to the year 1906, it would, nevertheless, seem to me that the previous history of the defendant company

and the facts above referred to would be proper and necessary. It may be true that each individual transaction, agreement, or business arrangement, standing by itself, may be entirely lawful, and yet, when considered in connection with all the transactions and agreements, and the uses and purposes to which they are put, it may be found that, taken together, they constitute an illegal scheme to prevent competition. It is necessarily a difficult matter to determine upon an application of this kind the merits of the contentions of the respective parties. To attempt to determine the effect of the various contracts, or to assume their purpose and scope, would be a hopeless task. In my judgment the plaintiff has presented sufficient facts to entitle him to the inspection.

　Petition granted.